UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PERFICIENT, INC., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | No. 1:16-cv-10470-ADB |
| NICHOLAS PRIORE, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM & ORDER**

Before the Court is Plaintiff Perficient, Inc. ("Perficient")'s Motion for a Preliminary Injunction against its former employee, Defendant Nicholas Priore ("Priore"). Perficient alleges that Priore violated the terms of his employment agreement, which included confidentiality and non-compete clauses, when he resigned his position at Perficient and began working for SeniorLink, Inc. ("SeniorLink"), one of Perficient's then clients. For the reasons set forth in this Memorandum and Order, the Court finds that Perficient has met its burden of demonstrating that preliminary injunctive relief is warranted, and Plaintiff's Motion for a Preliminary Injunction is therefore ALLOWED.

## I.   PROCEDURAL BACKGROUND

Perficient initiated this lawsuit in the Circuit Court of St. Louis County, Missouri, where it filed a Verified Petition for a Temporary Restraining Order, a Preliminary Injunction, a Permanent Injunction, and other Relief on February 19, 2016. [ECF No. 5] ("Verified Pet."). On February 24, 2016, Priore removed the action to the federal District Court for the Eastern District of Missouri on the grounds of diversity jurisdiction. [ECF No. 1]. Two days later, Priore filed a

Motion to Dismiss for Lack of Subject Matter Jurisdiction, or, in the Alternative, to Transfer Venue to the District of Massachusetts. [ECF No. 14].

On February 29, 2016, the District Court (Perry, J.), held a hearing on Perficient's Motion for a Temporary Restraining Order, after which the Court granted Perficient's Motion and ordered it to post a $4,000 bond. [ECF No. 21]. The Court entered an Order restraining and enjoining Priore from working for or providing any services to SeniorLink until March 14, 2016. [ECF No. 22]. The Court also set a further hearing on Perficient's Motion for a Preliminary Injunction for March 14, 2016 and ordered the parties to conduct expedited discovery in the interim period. [ECF No. 26].

Prior to the scheduled preliminary injunction hearing, the Court granted Priore's Motion to Transfer venue to the U.S. District Court for the District of Massachusetts. [ECF No. 29]. The case was reassigned to this session on March 7, 2016.

On March 14, 2016, the parties appeared before this Court for a hearing on Perficient's Motion for a Preliminary Injunction. After hearing from the parties, the Court ordered additional briefing on the Motion and extended the temporary restraining order previously entered by the Eastern District of Missouri. [ECF No. 39]. The parties filed supplemental memoranda on Perficient's Motion [ECF Nos. 40, 41] and appeared before the Court for a further hearing on April 13, 2016.

## II.    FINDINGS OF FACT

Perficient is a technology and management consulting firm serving clients throughout the United States. See Declaration of Eli Burstein [ECF No. 40-1] ("Burstein Decl.") ¶ 8. The company is incorporated in Delaware and maintains its principal place of business in St. Louis, Missouri. See Verified Pet. ¶ 2. Perficient designs, builds, and delivers a variety of technology

solutions for its clients. Burstein Decl. ¶ 8. Perficient's competitors include other consulting firms like Accenture, Capgemini, Infosys, and IBM Global Services Group. See Deposition of John F. Finnegan [ECF Nos. 40-4, 41-2] ("Finnegan Dep."), 11:7-15. A substantial percentage of Perficient's annual revenues are derived from "repeat business" from clients who had used Perficient's services during the previous year. See Burstein Decl. ¶ 9, Ex. 1.

Mr. Priore is 23 years old and a 2014 graduate of the University of North Carolina at Chapel Hill, where he received a Bachelor of Science degree in Physics. See Deposition of Nicholas Priore [ECF Nos. 40-2, 41-1] ("Priore Dep."), 8:20-9:5.

### A. Priore's Employment with Perficient

After graduating from UNC, Priore's first job was working as a Technical Consultant for Perficient. He moved to Boston and began working for Perficient in July 2014. See Priore Dep. 11:17-24. His annual salary was $70,000. Burstein Decl. ¶ 6.

As a condition of his employment, Perficient required Priore to execute a Confidentiality and Intellectual Property Assignment Agreement ("CIPAA") dated July 31, 2014. See Burstein Decl. ¶¶ 15-16 & Ex. 2. By signing the CIPAA, Priore agreed "at all times during the term of [his] employment with the Company and thereafter," to "hold in strictest confidence . . . all Confidential Information," and "not to use, directly or indirectly . . . or disclose to any person or entity any Confidential Information, without the prior and specific written authorization of the Company." Id. at Ex. 2. The CIPAA further recites that upon execution of the agreement, Perficient "agrees to associate Employee with the goodwill of the Company," and that Priore "agrees not to use Employee's association with the Company's goodwill for the benefit of anyone other than the Company." Id.

The CIPAA also contains a non-solicitation and non-competition clause, which provides in relevant part as follows:

> So as to enforce Employee's promises regarding Confidential Information and the Company's goodwill, Employee agrees that [he] will not, for the twenty-four (24) month period immediately following the termination of Employee's employment for any or no reason:
>
> (a) directly or indirectly: (i) solicit (or assist another in soliciting) any Covered Client or Prospective Client for Competitive Products or Services; or (ii) provide (or assist another in providing) Competitive Products or Services to any Covered Client or Prospective Client . . . .

Id. "Competitive Products or Services" are defined as "any products or services that are competitive with any of the products or services being offered, marketed, or actively developed by the Company as of the date of the termination of Employee's employment with the Company . . . ." Id. "Covered Client or Prospective Client" means

> (i) any of the Company's clients or Prospective Clients with whom Employee had contact (whether in person, by phone, by e-mail, or otherwise) as an employee of the Company during the last twelve (12) months of Employee's employment; and (ii) any of the Company's clients or Prospective Clients about whom Employee had any Confidential Information during the last twelve (12) months of Employee's employment.

Id.

During the course of his employment with Perficient, Priore was assigned to work for three different Perficient clients. Between October 2014 and March 2015, Priore worked for the BP/Deepwater Horizon Claim Center. From March 2015 until May 2015, Priore worked for Citizens Bank. Finally, and most relevant here, Priore was assigned to work for SeniorLink beginning in May 2015. See Priore Dep. 85:17-86:24; see also Priore Dep. Ex. 12 (Perficient Invoices).

SeniorLink coordinates and provides home health and personal care to senior citizens, the underserved, and the Medicaid population. See Affidavit of Michael Ciano

4

[ECF No. 20-2] ("Ciano Aff.") ¶ 3; Deposition of Michael Ciano [ECF Nos. 40-5, 41-3] ("Ciano Dep.") 8:23-9:2. SeniorLink is not in the business of providing IT consulting services, and it is not a competitor of Perficient. Ciano Aff. ¶ 4.

In April 2015, SeniorLink and Perficient had entered into a Master Services Agreement ("MSA"), under which Perficient agreed to provide IT personnel to assist SeniorLink in developing software applications based on a platform known as "Pegasystems." Ciano Aff. ¶ 6; see also Ciano Dep. 9:22-10:4. From May 2015 through October 2015, at least four Perficient employees, including Priore, provided services to SeniorLink on a full or part-time basis. See Priore Dep. Ex. 12.

In November 2015, Michael Ciano joined SeniorLink as its Chief Information Officer. Ciano Dep. 4:14-18. He testified that when he arrived at SeniorLink and reviewed the state of the project Perficient had been working on, he found it to be "unsatisfied." Id. at 75:14-17. SeniorLink considered the project to be over budget, and not on schedule to meet its delivery date. Id. at 75:18-24. Over the next several months, Mr. Ciano requested that several Perficient employees be "removed" from the SeniorLink project, because he believed they were not adding any value to the project, or were unable to deliver work product in a timely manner. Id. at 41:7-43:14. In December 2015, only Priore and one other Perficient employee remained staffed on the SeniorLink account. See Priore Dep. Ex. 12.

In December 2015, a meeting took place between SeniorLink representatives and Perficient, during which SeniorLink expressed some concern and dissatisfaction with the state of the project. Ciano Dep. 78:15-82:18; see Burstein Decl. ¶ 29; Finnegan Dep. at 26:2-27:10; 50:6-18. SeniorLink did not, however, terminate its Master Services Agreement with Perficient at that time. Ciano Dep. 47:3-7; Finnegan Dep. 51:17-20. In

fact, following the December meeting, SeniorLink sent Perficient two additional work orders under the MSA, and Priore continued working on the SeniorLink project until his last day of employment with Perficient on February 12, 2016. See Burstein Decl. ¶ 31-32 and Ex. 4 (Perficient Change Orders). Mr. Ciano testified that, in contrast to the other Perficient employees, he did not have "any problems" with Priore or his work, and that he viewed Priore as "a good . . . Pega configuration developer." Ciano Dep. 57:13-24.

During the nine month period that Priore worked for SeniorLink, his usual practice was to work on-site in SeniorLink's offices every Monday through Thursday, and spend Fridays in Perficient's offices. Priore Dep. 21:3-11. Priore typically worked between 32 and 40 hours per week on the SeniorLink account. See Priore Dep. Ex. 12. Perficient invoices reflect that from May 2015 through January 2016, Perficient regularly billed SeniorLink approximately $23,000 per month for Priore's services. See id. Mr. Ciano testified that he was not aware of any occasion when SeniorLink had refused to pay Perficient's invoices, although he had not yet decided whether to pay the invoices from January and February 2016. Ciano Dep. 98:1-99:4.

Over the course of his employment with Perficient, Priore received training on the Pega Systems platform, and Perficient required him to obtain certification as a "Pega Systems Architect." Priore Dep. 15:1-6; see also Testimony of Nicholas Priore, 2/29/2016 Motion Hearing [ECF No. 40-3] ("TRO Hearing"), pp. 35-36.

**B.  Priore leaves Perficient and takes a job at SeniorLink**

In December 2015, Priore began looking for new job opportunities. He encountered an online job posting from SeniorLink, which advertised an open position for a Pega Systems Developer. Priore Dep. 24:15-26:17. Priore submitted an application for the job, and after an interview with Mr. Ciano, SeniorLink extended a job offer to Priore on January

28, 2016. Ciano Dep. 18:1-21:1; Priore Dep. Ex. 4 (Offer Letter). His annual salary was set at $100,000 per year. Priore Dep. Ex. 4. Priore accepted the job offer on January 30, 2016. Id.

On January 29, 2016, Priore emailed his letter of resignation to Eli Burstein, the Pega Practice Director at Perficient. See Priore Dep. Ex. 8 (Resignation email). On February 8, 2016, Perficient's counsel sent Priore a cease and desist letter, claiming that the terms of his proposed employment would violate Priore's CIPAA with Perficient, and threatening to take legal action if Priore began working for SeniorLink. See Burstein Decl. ¶ 24 & Ex. 3.

Despite receiving the cease and desist letter, Priore began his employment with SeniorLink on February 15, 2016. Ciano Dep. 31:5-11. As an employee of SeniorLink, Mr. Priore continued to work on the same or similar projects at SeniorLink that he worked on as a Perficient employee. Ciano Dep. 25:7-14; 71:20-72:3. In addition, Priore continued to work at the same SeniorLink offices that he worked in while on Perficient's payroll. Id. at 25:15-26:10. Priore also testified that the "Pega Systems Architect" certification he received while working for Perficient is essential to the work he currently performs at SeniorLink. TRO Hearing, p. 36.

Perficient has performed no further work on the SeniorLink project since Priore's last day of employment with Perficient. Burstein Decl. ¶ 33.

### III. PERFICIENT'S MOTION FOR A PRELIMINARY INJUNCTION

Perficient moves for preliminary injunctive relief enforcing the restrictive covenant and confidentiality provisions of Priore's employment contract, and enjoining him from providing competitive products or services to SeniorLink. Perficient argues that it is likely to succeed on

the merits of its contract claim, because Priore is violating the CIPAA by working for SeniorLink, and because the CIPAA's restrictive covenant is valid and enforceable under Massachusetts state law. Perficient also argues that it will suffer irreparable harm in the absence of an injunction, whereas an injunction would impose only a limited burden on Priore, whose is only restricted from working for the three clients to whom he provided services while at Perficient. Perficient also contends that granting injunctive relief and enforcing the parties' contract is consistent with the public interest.

Priore presents several arguments in opposition to Perficient's Motion. First, he argues that Perficient has not shown a likelihood of success on the merits, because his employment at SeniorLink does not violate the CIPAA's restrictive covenant. Alternatively, Priore argues that the CIPAA's restrictive covenant is unenforceable, because it is not necessary to protect any legitimate business interest, and because its 24-month duration is unreasonably long. Priore also contends that Perficient has not demonstrated a risk of irreparable harm, and that the public interest does not favor an injunction under these circumstances.

## IV.   DISCUSSION

### A.  Legal standard

"In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Perficient, as the moving party, bears the burden of satisfying each of these elements. See Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003).

Further, the four factors "are not entitled to equal weight in the decisional calculus." Harnett, 731 F.3d at 9. Rather, the movant's likelihood of success on the merits "is the main bearing wall of the four-factor framework." Id. at 10 (internal quotations and citation omitted). In the First Circuit, "proving likelihood of success on the merits is the 'sine qua non' of a preliminary injunction." Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015) (citing New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id. (quoting SprintCom, 287 F.3d at 9). Additionally, courts in the First Circuit "measure irreparable harm on a sliding scale, working in conjunction with a moving party's likelihood of success on the merits . . . such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown.'" Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 42-43 (1st Cir. 2010) (internal quotations and citation omitted).

    **B. Analysis**

        **1. Likelihood of success on the merits**

In this diversity case, state law provides the "substantive rules of decision" with respect to Perficient's contract claims against Priore. Harnett, 731 F.3d at 9 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Under Massachusetts law (which both parties agree applies), a restrictive covenant in an employment agreement is enforceable "only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest." Boulanger v. Dunkin' Donuts Inc., 442 Mass. 635, 639 (2004).

First, Priore contends that Perficient is unlikely to succeed on its claims because Priore's employment with SeniorLink does not violate the CIPAA's restrictive covenant. While Priore

concedes the CIPAA prohibits him from providing "Competitive Products or Services" to any Covered Client, he notes that the CIPAA defines "Competitive Products or Services" as "any products or services that are competitive with any of the products or services being offered, marketed, or actively developed by the Company as of the date of the termination of Employee's employment with the Company." Priore contends that the only fair reading of this provision is that it prevents him from going to work for a *direct competitor* of Perficient. Because SeniorLink does not compete with Perficient and is not in the business of providing IT consulting services, Priore argues that he is not in violation of the CIPAA's restrictive covenant.

The Court rejects Priore's proposed interpretation of the CIPAA, because it is not supported by the plain language of the contract, and because it defies common sense. Although Perficient is, broadly speaking, a technology and management consulting firm, that is not the only "product" or "service" that the company provides. Perficient also delivers specific IT services and expertise to clients, through individual employees like Priore. Here, the Court finds that Priore is performing essentially the same function as a SeniorLink employee that he was previously performing while on Perficient's payroll. Thus, Priore is providing "services that are competitive with" the services that Perficient had been providing at the time of his resignation. The CIPAA, by its terms, is not limited to restricting Priore from working for a competing IT consulting or staffing firm.

Alternatively, Priore argues that even if the CIPAA prohibits him from working for SeniorLink, the restrictive covenant is unenforceable under Massachusetts law for two reasons. First, he argues that the CIPAA does not serve to protect any "legitimate business interest." Second, he argues that the CIPAA's two-year limitation is greater than necessary to protect any legitimate business interest.

In Massachusetts, "[l]egitimate business interests include protection of trade secrets, confidential information, and good will." Boulanger, 442 Mass. at 641. Here, Perficient contends that the restrictive covenant is necessary primarily because it protects the company's good will, or the "benefit derived from reputation for promptness, fidelity and integrity with customers." Kroeger v. Stop & Shop Companies, Inc., 13 Mass. App. Ct. 310, 316 (1982) (citing Angier v. Weber, 14 Allen 211, 215 (1867)); see also HealthDrive Corp. v. Chall, No. CIV.A. 99-6361, 2000 WL 33967781, at *3 (Mass. Super. Feb. 9, 2000) ("Goodwill is the company's positive reputation in the community, particularly in the eyes of its customers and potential customers.").[1]

Perficient argues that its good will is particularly worthy of protection here, where (1) Priore had limited experience in the industry prior to working for Perficient; (2) his specific knowledge of the Pega Systems platform, which he is now exploiting at SeniorLink, was acquired through his employment with Perficient; and (3) Priore's relationship with SeniorLink was initiated, developed, and maintained through the use of Perficient's resources. The Court largely agrees, and it further notes that Perficient has a particularly strong interest in protecting customer good will, where a substantial percentage of Perficient's annual revenues are derived from repeat business.

In response, Priore argues that by early 2016, SeniorLink had become so dissatisfied with Perficient's services that Perficient had no remaining goodwill to protect, and no likelihood of repeat business from Perficient. On this point, the Court notes that the facts surrounding

---

[1] Perficient also argues that, in addition to good will, it has a legitimate business interest in preventing "disintermediation," *i.e.*, the practice of "cutting out the middleman," which it claims is particularly important interest in the staffing and consulting industries. Although the Court is not aware of any Massachusetts cases that have expressly addressed whether preventing "disintermediation" is a legitimate business interest, the concept might be best understood as a subset of protecting good will. Here, the Court has considered Perficient's arguments regarding "disintermediation" in conjunction with its analysis of good will.

11

Perficient's relationship with SeniorLink are contested. For purposes of Perficient's motion for a preliminary injunction, however, the Court finds that by December 2015, SeniorLink had expressed some dissatisfaction with Perficient's performance, but SeniorLink had not yet terminated the parties' Master Services Agreement. More importantly, however, SeniorLink had not expressed any dissatisfaction with Priore's performance. To the contrary, Mr. Ciano testified that he viewed Priore as a good Pega developer. Further, SeniorLink continued to request Perficient's services in January and February 2016. Thus, even assuming that Perficient's goodwill with SeniorLink had been diminished, Perficient still had some good will to protect in early 2016, and Priore in particular served a critical role in maintaining that particular customer relationship. Thus, the Court finds that Perficient has a legitimate business interest in protecting its goodwill, and that the CIPAA's restrictive covenant aims to prevent Priore from interrupting or misappropriating that goodwill by going to work directly for SeniorLink, or any other of Perficient's clients.

Priore also argues that the restrictive covenant is unenforceable because its 24-month duration is unreasonably long. Under Massachusetts law, a covenant not to compete must be no more restrictive than necessary to protect the employer's legitimate business interests. See Boulanger, 442 Mass. at 643. The Court agrees with Priore that the covenant is longer than reasonably necessary to protect the interest identified by Perficient – *i.e.*, its good will. The Court finds it significant that Priore's job with Perficient was his first employment after college, and that he only worked for Perficient for a total of eighteen months. Further, Priore was assigned to work on the SeniorLink project for only nine months. A two-year restriction is likely longer than reasonably necessary to protect Perficient from a 23-year old college graduate who had only a 9-month relationship with the client at issue. In addition, Perficient does not argue that Priore

acquired any highly confidential, competitive intelligence during his time at Perficient that might justify a longer restriction. Instead, Perficient's primary interest is in preventing its employees and clients from "disintermediating" Perficient and misappropriating Perficient's goodwill by working directly for the Company's clients. The Court is inclined to find that a one year restriction is sufficient to serve this purpose. See Kroeger, 13 Mass. App. Ct. at 312 ("Rather than declining entirely to give effect to an unreasonable non-competition clause, a court may modify its terms so as to make it reasonable; i.e., onerous terms may be cut back."). For present purposes, however, the fact that the CIPAA's restrictive covenant may be longer than reasonably necessary is not fatal to Perficient's Motion for a Preliminary Injunction. Priore left his employment with Perficient only two months ago, meaning that Perficient is well within the window of reasonableness at this point in time.

To summarize, the Court finds that Perficient has demonstrated a strong likelihood of succeeding on the merits of its claim that Priore's employment with SeniorLink violates the terms of the CIPAA, and that the restrictive covenant at issue is enforceable under Massachusetts law, but for a period of not more than one year. Thus, Perficient has satisfied the "main bearing wall" of the four-factor test for a preliminary injunction, see Harnett, 731 F.3d at 10, and the Court evaluates the remaining three factors with this in mind.

### 2. Irreparable harm

The Court also finds that Perficient has met its burden of demonstrating a likelihood of irreparable harm in the absence of an injunction. "'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005).

Priore argues that Perficient is not entitled to a preliminary injunction because any harm to Perficient resulting from the loss of SeniorLink's business is easily calculable. The Court does not find this argument persuasive. Both Massachusetts courts and the First Circuit have recognized that harm to a company's good will, "like harm to reputation, is the type of harm not readily measurable or fully compensable in damages—and for that reason, more likely to be found 'irreparable.'" K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989); see also Kroeger, 13 Mass App. Ct. at 322 (noting that "the task of quantifying the consequences of violating a non-competition clause is a particularly difficult and elusive one."). Although it may be possible to calculate Perficient's estimated loss of revenues with respect to the particular project that Priore was working on for SeniorLink, it is more difficult to quantify the longer-term damage to Perficient's reputation, its potential for repeat business from SeniorLink, and its potential for referrals to other prospective clients.

Furthermore, Perficient's burden of showing irreparable harm is closely linked to Perficient's likelihood of success on the merits of its claim. See Braintree Labs., 622 F.3d at 42-43. Here, Perficient has shown a strong likelihood of prevailing on its claim that Priore is violating the CIPAA's restrictive covenant by working for SeniorLink, and "declin[ing] to enforce the covenant while the litigation work[s] its stately course" would deprive Perficient of much of the covenant's protection. Zona Corp. v. McKinnon, No. PLCV201100247, 2011 WL 1663094, at *2 (Mass. Super. Mar. 14, 2011). This is particularly true where, as here, Perficient has a specific interest in protecting its role as intermediary between its clients, on the one hand, and the individual employees that Perficient vets, trains, and supplies, on the other. Declining to enforce the restrictive covenant would have a potentially destructive effect on Perficient's underlying business model, even assuming damages are ultimately awarded. See Nat'l Eng'g

Serv. Corp. v. Grogan, 23 Mass. L. Rptr. 451, No. 071583, 2008 WL 442349, at *4 (Mass. Super. Jan. 29, 2008) (noting that "[c]ourts have been particularly willing to enforce covenants not to compete in order to preserve good will in the sales, marketing and staffing industries"); HR Staffing Consultants LLC v. Butts, 627 F. App'x 168, 173-74 (3d Cir. 2015) (holding that staffing agency's "ability to protect its role as an intermediary through the non-compete is essential to its very existence, and money will not remediate the injury if its business model is destroyed"). In these circumstances, Perficient has made an adequate showing that it is likely to sustain irreparable harm in the absence of an injunction.

### 3. Balance of hardships

The Court finds that the balance of relative hardships also favors Perficient. Although the Court is not enthusiastic about enforcing a restrictive covenant against a 23-year old recent college graduate, the covenant in this case only prevents Priore from working for or providing Competitive Products or Services to Covered Clients or Prospective Clients with whom he had contact during his last 12 months at Perficient. Here, there were only three such clients, one of which is SeniorLink. Further, the Court has indicated that it will enforce the restrictive covenant for no longer than one year. In light of Priore's educational qualifications, and the narrow scope of the restrictive covenant, the Court finds that enforcing the covenant is unlikely to prevent Priore from earning a living in his field. At most, it will impose a limited burden on Priore to find new employment. This hardship is far outweighed by the likelihood of harm to Perficient if an injunction does not issue, as discussed *supra*.

### 4. Effect on the public interest

Finally, the Court finds that the public interest favors injunctive relief in this case. Generally, "the public interest is served by enforcing contractual obligations, including reasonable restrictive covenants, between consenting parties." Iron Mountain Info. Mgmt., Inc. v.

Viewpointe Archive Servs., LLC, 707 F. Supp. 2d 92, 112 (D. Mass. 2010). The facts presented in this case do not warrant deviation from this general rule. Perficient gave Priore advance notice that it would seek to enforce the restrictive covenant if he began working for SeniorLink, and Priore knowingly chose to assume that risk. Accordingly, the Court finds that granting injunctive relief is not contrary to the public interest in this case.

V.   CONCLUSION

For the foregoing reasons, Perficient's Motion for a Preliminary Injunction [ECF No. 5] is hereby ALLOWED. The temporary restraining order previously entered by the Court on February 29, 2016 [ECF No. 22] is hereby EXTENDED until and including February 12, 2017, or until further Order of this Court.

SO ORDERED.

Dated: April 26, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE